IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville May 15, 2012

**TOMMY LEE PENDLETON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Franklin County**
**No. 18495     Thomas W. Graham, Judge**

**No. M2011-02207-CCA-R3-PC - Filed July 23, 2012**

Petitioner, Tommy Lee Pendleton, pled guilty to two counts of aggravated sexual battery and received concurrent sentences of fourteen years. He filed a petition for post-conviction relief alleging that his trial counsel provided ineffective assistance of counsel by failing to file a bill of particulars, by failing to obtain an expert witness to review the statements of the child victim, and by failing to spend adequate time investigating the case and preparing for trial. He further contends that his guilty pleas were involuntary because trial counsel's errors tainted the plea process. Finally, he claims that the trial court should not have accepted his plea in light of his hesitance during the guilty plea hearing. Discerning no error in the proceedings, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

David L. Stewart, Winchester, Tennessee, for the appellant, Tommy Lee Pendleton.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Procedural History

A Franklin County Grand Jury indicted petitioner for two counts of rape of a child and two counts of aggravated sexual battery. The State alleged that the offenses involved one

victim and occurred on or about October 8, 2008. Petitioner pled outside his range to the two counts of aggravated sexual battery on June 9, 2009. The State dismissed the two counts of rape of a child as part of the plea agreement. The trial court imposed the agreed-upon sentence of fourteen years for each count to be served concurrently in the Tennessee Department of Correction.

Petitioner filed a petition for post-conviction relief on June 14, 2010, and an amended petition on September 24, 2010. He filed a supplement to the amended petition on April 18, 2011. The post-conviction court held a hearing on the petition on September 15, 2011, and entered an order denying relief on September 23, 2011. This appeal follows.

## II.  Facts

### A.  Guilty Plea Hearing

At the guilty plea hearing, the State announced the following factual basis for the charges against petitioner:

> [T]he State would call in this case the young victim . . . , age three; [and] the victim's mother. The victim's mother is the cousin of the defendant in this case. The victim's mother will testify that she allowed the defendant to come into her house and to live there for a while [ ] because the defendant had no place else to live.
>
> The proof would show that the young victim had complained about the defendant's physical contact on multiple occasions. The mother called the authorities, and ultimately a rape kit was performed on the child. The child's clothing was collected. The TBI Crime Lab performed DNA testing [and] [l]ocated the defendant's sperm on several items of the victim's clothing, and Your Honor, we believe that this proof would substantiate the plea in both of these pleas.

Trial counsel agreed that there was "significant correctness to the state's case."

Because petitioner alleges error with regard to the guilty plea hearing, we note the following from the transcript of the hearing as the State announced the terms of the plea agreement to the court:

THE COURT:        Did you hear that, Mr. Pendleton?

Approach, counsel . . .

(A bench conference was held on the record at sidebar:)

THE COURT:  I've been watching this guy.  He doesn't act like he's - -

[TRIAL COUNSEL]:  He is.  We've had him evaluated.  He just doesn't want to do it, that's why he's looking like that.

[THE STATE]: We did have a mental evaluation, he's okay.

[TRIAL COUNSEL]: He's fine, Judge.

 . . . . .

(Upon completion of the bench conference, the proceedings continued:)

 . . . . .

THE COURT: If you had a jury trial you would have the right to the assistance of your lawyer at all stages of that proceeding.  If you were convicted at a jury trial[,] you would have the right to appeal that conviction to a higher court. Understand that if you enter a guilty plea you'll lose your right to appeal your conviction.

 . . . . .

Are you willing to give up these rights to enter your plea, . . . Mr. Pendleton?

MR. PENDLETON: Yeah.

### B.  Post-Conviction Hearing

Petitioner called trial counsel, an assistant district public defender, as his first witness. She testified about the procedure she used when she met with a client for the first time.  She stated that she and the client would review the indictment, the elements of the offense(s), his criminal history, and the range of punishment for the offense(s).  If she had obtained discovery, she would review it with her client.  If she had not received discovery before the first meeting, that would be the subject of a second meeting.  She would also look for any "outstanding" issues such as competency or suppression issues.  She would then review the

facts underlying the current offense. She recalled that during her first meeting with petitioner, he informed her that he had some mental health issues, which prompted her to request a mental evaluation. The basis for the request was that petitioner told trial counsel that he had a very hard childhood and experienced problems in school. She thought petitioner may have had some sort of disorder. The results of the examination indicated that petitioner was competent to proceed to trial. Trial counsel testified that petitioner never indicated that he did not understand the charges against him.

Trial counsel's file contained notes that showed she talked with petitioner on four different dates. She further indicated that she would have talked with or visited petitioner on occasions when she did not document her file. For instance, the trial court held "discussion days" on February 17 and March 26, 2009, as well as other court dates, during which trial counsel spoke with petitioner, but her file did not reflect those discussions. The dates of her communications with petitioner did not bear a corresponding entry showing how long each session lasted. She testified that the length of the visit varied depending on the purpose of the visit. For example, reviewing discovery would take longer than communicating a plea offer. Trial counsel recalled the last visit she had with petitioner, June 3, 2009, because during the meeting he said he did not want to accept the State's offer. Another note indicated that she spoke with petitioner on June 8th. Petitioner pled guilty on June 9, 2009. Trial counsel testified that if petitioner had not changed his mind and decided to accept the State's plea offer, they would not have been in court on the plea day.

In addition to the motion for a mental evaluation, trial counsel filed a motion to determine the competency of the child victim as well as the routine discovery motions. She would have filed additional motions if the case had proceeded to trial. In her file, she made a note to evaluate whether she needed to file a bill of particulars. She determined that she did not need to file it because, although the indictment alleged "in the month of," the discovery materials were more specific about a date. While petitioner would have benefitted from knowing the exact date, trial counsel stated:

> The State has to narrow it down as best they can with a child witness . . . if you look at the documents that were given, the child reported it the very next morning, so if we looked at the dates on the documents that we did have, we could determine the date that the state was actually alleging, even though the indictment was not specific.

From the discovery provided, trial counsel was able to glean and communicate to petitioner the alleged date, time, and location of the offenses. Even though the laboratory results showed DNA evidence on more than one piece of clothing, trial counsel did not see the need for a bill of particulars because she believed that the evidence pertained to only one incident

-4-

and the tested clothing items for that incident were the victim's pull-up (disposable underpants) and pajamas. She did not believe she would have obtained any additional information from filing a bill of particulars. The State clearly communicated to trial counsel that it was alleging two incidents that occurred on one night.

Trial counsel gave petitioner all of the necessary information upon which he could decide whether to accept a plea offer or go to trial. She reviewed the recording of the child's interview, the DNA report, and the Children's Advocacy Center's report with petitioner. She explained the potential sentence he would face if a jury determined his guilt and that the competency of the child, i.e., if the child testified appropriately, could have an impact on the jury's verdict.

Trial counsel asked petitioner about a potential alibi. He gave her the names of three individuals with whom he had been drinking beer on the evening in question. Trial counsel attempted to reach each of them by letter and by telephone. She was unsuccessful in reaching two of the people, and the third person could not remember the event at all. The District Public Defender's Office had represented all three individuals on different charges, and all were convicted felons. Petitioner could not assist trial counsel by recounting his version of the events; he told trial counsel that he passed out in the doorway of his cousin's house on his way in, and afterward he could not account for his actions. Petitioner had been staying at his cousin's house, and the victim was his cousin's daughter. Petitioner told trial counsel that his cousin's husband stepped over him the following morning as he left the house to go to work.

Trial counsel further testified that petitioner consistently maintained his innocence and said he wanted a trial. Petitioner eventually decided to accept a "best interest plea" and did not admit his guilt. On cross-examination, trial counsel agreed that younger children are more easily influenced and more impressionable than older children. Because the victim was three years old at the time of the offenses, trial counsel was concerned about the veracity of her testimony. Trial counsel stated that authorities elicited several statements from the victim, but all were consistent. Trial counsel did not consider retaining an expert to evaluate whether the child's testimony could have been influenced by statements of others, but she did consider hiring an expert to determine whether a three-year-old child could actually be competent to testify. Trial counsel was unsuccessful in her search for such an expert. She believed that, even if she had found an expert who would offer such testimony, the child's statements would not have been excluded from trial, but instead the jury would have weighed the credibility of the testimony in light of the expert's opinion. The better course would have been to have the child's actual statements excluded from evidence, which was trial counsel's first and primary strategy.

Trial counsel testified that she succeeded in convincing the trial court to hear the issue of the victim's competency before trial rather than the usual practice of having a competency hearing after the trial begins. Because the trial court scheduled a pre-trial hearing on the child's competency as a witness, the State told trial counsel that it did not want to subject the victim to the hearing. Trial counsel recalled that the State offered to let petitioner enter a plea to two counts of aggravated sexual battery with an agreed dismissal of the two counts of rape of a child. However, if petitioner pursued the pre-trial motion, the State would revoke its offer. Trial counsel relayed the information to petitioner, who ultimately made the decision on whether to proceed with the pre-trial competency motion or accept the plea offer.

Petitioner made trial counsel aware that the victim's mother had previously made allegations against a family member that were later determined to be false. Petitioner believed that the mother had wrongly influenced the child. Trial counsel did not consider the issue of the mother's improper influence to be valid, because the mother would have had to not only coach her three-year-old daughter about what to say, but would also have had to gain access to petitioner's DNA and plant it on the child's clothing.

Trial counsel stated that on the day petitioner entered the pleas, he did not want to do so. He resisted because "he wanted it to magically go away." She further testified:

He didn't want a trial, and he didn't want to plead. He just wanted it to all go away, so when he made his decision, I don't know that he was completely – I think he thought it was the best thing for him, but he wasn't happy about it. That's what I meant by that.

The court observed petitioner's demeanor during the guilty plea hearing and called a bench conference. Trial counsel informed the court that petitioner was hesitant to go forward with his plea. By her statement to the trial court, she was not "bluntly informing the Court that he didn't want to take a guilty plea . . . ." Petitioner did not want to go to trial and face the possibility of two twenty-five-year consecutive sentences nor did he want to accept two concurrent sentences of fourteen years. However, because the case would have to be resolved by a trial or a plea, petitioner decided to accept the plea agreement. A notation in the transcript of the plea hearing indicated that trial counsel conferred with petitioner immediately following the bench conference. She testified that petitioner did not tell her that he wanted to stop the plea proceedings and go to trial. None of petitioner's responses during the plea colloquy indicated that he was hesitant to enter the plea.

Petitioner next called as a witness another assistant district public defender who assisted trial counsel (hereinafter "co-counsel"). Co-counsel stated there were occasions during which he met with petitioner without trial counsel present. On March 18, 2009, co-

counsel reviewed the status of the case with petitioner, reviewed his rights with him, and explained what petitioner could expect as his case progressed. Co-counsel's notes indicated that he reviewed discovery with petitioner during that visit. He did not recall whether trial counsel was present during that visit; however, he remembered that he was present on at least one occasion when trial counsel reviewed discovery with petitioner. On May 19, 2009, he discussed the issue regarding the victim's competency with petitioner. Co-counsel testified that petitioner never indicated to him and trial counsel that he had assaulted the victim. He said that on one or two occasions, petitioner said, "I didn't do it, I don't think I did it," but petitioner also admitted that he was not sure what had happened that night.

Co-counsel discussed with trial counsel whether they should file a bill of particulars. During cross-examination, he reluctantly agreed that even though the State's discovery "pinpointed" the date of the offense, it would still have been helpful to lock the State into a specific date via a bill of particulars to help petitioner avoid double jeopardy.

Co-counsel testified that an alibi defense would be utilized in a case involving a question of identity, but in petitioner's case, identity of the perpetrator was not an issue. He did not recall a specific conversation with petitioner in which he advised petitioner to plead guilty; however, he could have informed petitioner the State had substantial evidence against him and there would be a substantial likelihood of a conviction. Co-counsel could not deny that he may have recommended a guilty plea to petitioner but would have told petitioner that it was ultimately petitioner's decision whether to take the offer.

When co-counsel asked petitioner how his semen could have been identified in the victim's undergarments, petitioner stated that "on at least one occasion he had masturbated in the bathroom, and that, perhaps, the semen had been retrieved by the child's mother, and somehow . . . placed upon the child's undergarments to get him in trouble." Co-counsel had a vague recollection of petitioner informing him that the victim's mother had a history of making false allegations but did not remember the substance of the allegations.

In preparing the defense, co-counsel and trial counsel searched for a witness, a child psychiatrist or a similar expert, who could testify about the very basics of the competency of a child, i.e., whether a three-year-old child would know the difference between the truth and a lie. They did not try to locate an expert witness who would review the facts and circumstances of the case and give an opinion about whether that particular victim had been coached in her statements. He had no recollection of being concerned that the child was coached.

Co-counsel further testified that in a case in which the defendant was going to plead guilty, he did not file every possible relevant motion. He would continue to file every proper

motion until the day the trial began. On the day petitioner pled guilty, he did not tell co-counsel, nor did co-counsel hear the petitioner tell trial counsel, that he wanted to stop the proceedings and set the matter for trial. Petitioner appeared to understand all of the questions asked during the plea colloquy.

Petitioner testified that he accepted the guilty plea with the understanding that he would be able to appeal it. He knew he was going to receive a sentence of confinement but that "[i]t was just [his] choice on what time [he] was going to get." Petitioner thought that if he proceeded to trial and was convicted, he would not be able to try to "beat this." He then agreed that he would have had an appeal after a trial. During cross-examination by the State, petitioner agreed that he remembered the trial court informing him that if he entered a guilty plea, he would lose the right to appeal the conviction. He added that his misunderstanding during the guilty plea hearing was due to trial counsel telling him, "[I]f you take the plea we can win it on appeal." He clarified that she did not tell him that he could "file" an appeal; she only said they could "win" the case on appeal. Petitioner testified that her exact words to him were "I know you're innocent, it's a bunch of bull**** and if you take the plea we can win it on appeal."

Petitioner testified that he was sitting there during the guilty plea hearing, still not sure what he was going to do, when the judge stopped the hearing and asked counsel to approach. He recalled hearing the judge say, "I have a bad vibe about this. I don't like the way he's sitting, and you need to talk to him, or I'm going to, you know, jerk it away." Petitioner testified that trial counsel told him he needed to accept the offer or the trial court would remove it from consideration. He testified, "I really didn't know what I wanted. I mean, I wanted a trial, but I just – I couldn't – I didn't – I didn't know how to go."

Petitioner testified at the post-conviction hearing that during trial preparation he told trial counsel that the victim's mother may have fabricated the allegations against him because of a conflict between them arising from his mother's death. Petitioner recalled that he told trial counsel he was standing at the head of his mother's casket and all he could hear around him was discussion about who was going to get what property. He stated that the victim's mother brought the allegations against him because she was motivated by a desire to obtain his mother's estate. He thought she somehow obtained his semen and planted it on the victim's undergarments. While petitioner denied "accusing" the victim's mother of coaching the child, he testified that it seemed "the only thing possible." Petitioner denied that he was homeless during the time of the offense and denied that the victim's mother allowed him to stay in their home. The victim's mother never filed a claim against the estate of petitioner's mother.

Petitioner disputed that he told trial counsel he did not remember the events of the night in question. He testified he "wasn't completely impaired." He said he never told anyone that he passed out in the doorway of his cousin's home. He attributed trial counsel's testimony about that point to "a misconception about what was said, but that's not what was said." He further testified he told trial counsel that he went to his cousin's house the morning after he was drinking with the three individuals, not on the night he was with them.

According to petitioner, trial counsel discussed the allegations against him and the proof that the State intended to introduce against him. She informed him that his DNA was found all over the victim's clothes and underpants. Trial counsel also told petitioner that the victim gave multiple statements accusing him of vaginally and orally violating her. Petitioner confirmed that his counsel reviewed his alleged alibi defense with him. They discussed with him the possibility of trying to have the court declare the child incompetent to testify. He also admitted that his attorneys met with him numerous times. He believed that his attorneys collectively spent approximately four hours meeting with him and that each session lasted only five to ten minutes. He initially thought that his attorneys did the best job that they could, but when he reviewed his case, he concluded that they omitted too much information. If not for the mistakes of his attorneys, he would have demanded a jury trial. On rebuttal, trial counsel denied having told petitioner that he could appeal his guilty plea.

## III. Analysis

### A. Ineffective Assistance of Counsel

A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2010); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correct-

ness on appeal. *Rigger*, 341 S.W.3d at 306 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

> '[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); s*ee Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); s*ee Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Id.* (citing *Howell*, 185 S.W.3d at 326). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Id.* (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

Petitioner first claims that trial counsel was ineffective for failing to file a bill of particulars to narrow the time of the offenses. In its order denying relief, the post-conviction court made extensive findings of fact. The court found that petitioner's attorneys discussed the necessity of filing a bill of particulars but did not file one for several reasons. They concluded that they knew what the State expected to prove at trial, that the materials they received in the discovery process provided detailed information about the specific charges and the charged acts, that they knew the exact time, date, and place of the criminal conduct, and that they knew who the State would call as witnesses. We have determined that the post-conviction court's findings of fact are supported by the evidence, and we credit those findings with the weight of a jury verdict.

The post-conviction court found that petitioner and his counsel were "fully aware of the specific conduct and acts alleged in the indictment" and "the alleged location of the criminal conduct, the alleged date and time frame of the criminal conduct, and the evidence and witnesses supporting the charges." In reviewing de novo the post-conviction court's legal conclusion that trial counsel's failure to file a bill of particulars did not constitute ineffective assistance of counsel, we find no error. Petitioner has failed to establish that his counsel's performance was deficient or that he was prejudiced by counsel's failure to file a bill of particulars. *See Joe Tyree v. State*, No. M2008-01273-CCA-R3-PC, 2009 WL 2951145, at *4 (Tenn. Crim. App. Aug. 21, 2009) (stating that petitioner is not entitled to relief for counsel's failure to file a bill of particulars when trial counsel knew the time line alleged by the State, and petitioner failed to demonstrate either prejudice or that he would have proceeded to trial if counsel had filed the motion.) Petitioner is not entitled to relief on this issue.

Petitioner next alleges that trial counsel was ineffective for failing to retain an expert witness to review the statements of the victim and determine whether she may have been "coached." The post-conviction court found that the victim made an unrecorded statement to her mother implicating petitioner, transcribed (but not videotaped) statements to the Department of Children's Services and to the forensic interviewer with the Children's Advocacy Center, and a recorded statement to law enforcement. Trial counsel reviewed all of the statements and saw no indication that the victim was improperly influenced. Counsel sought an expert to testify generally about the competency of a three-year-old child witness. The post-conviction court also noted that the victim's statements were supported by the physical evidence in the case.

-11-

The post-conviction court found that trial counsel performed "within the range of competence demanded of attorneys in criminal cases with respect to this issue." We agree. The record reflects that because of trial counsel's diligence in questioning the competence of the victim, the State offered to dismiss the two counts of rape of a child to protect the victim from further distress. Trial counsel's performance was not deficient in this regard. Further, we note that petitioner failed to present evidence that he was prejudiced by trial counsel's representation. Petitioner did not present an expert to testify about the competency of the child witness in this case. *See Kevin Jones v. State*, No. W2009-02051-CCA-R3-PC, 2010 WL 4812773, at *4 (Tenn. Crim. App. Nov. 19, 2010) (noting that, in a post-conviction case, where trial counsel testified about why he did not believe that a medical expert was necessary at trial, and petitioner failed to present evidence at post-conviction hearing to show that counsel's belief was mistaken, petitioner failed to establish ineffective assistance of counsel). We conclude that petitioner has failed to establish either deficient performance by his trial counsel or prejudice.

In petitioner's final claim of ineffective assistance of counsel, he alleges that trial counsel failed to adequately investigate and explain the case to him. The post-conviction court made findings of fact detailing the testimonies of trial counsel and petitioner, both of which demonstrate that trial counsel fully informed petitioner regarding the offenses with which he was charged, the evidence against him, the status of his alibi defense, and trial counsel's efforts to try to have the victim declared incompetent as a witness. The court's findings are supported by the record. Despite his testimony that counsel met with him only a few times in short meetings, petitioner acknowledged on cross-examination that counsel discussed his case with him. Petitioner failed to present evidence that trial counsel failed to inform him or explain to him any aspect of his case.

The post-conviction court found that the attorneys sufficiently investigated petitioner's case, reviewed it with him, and provided petitioner with adequate representation. Trial counsel investigated a possible alibi defense for petitioner but was unsuccessful. She pursued the theory of having the witness declared incompetent but could not find an expert who would so testify. Counsel reviewed all of the evidence with petitioner. In light of trial counsel's efforts and the overwhelming physical evidence against petitioner, he was not prejudiced by counsel's representation at trial. Again, petitioner has failed to demonstrate either prong of ineffective assistance of counsel under *Strickland* and *Baxter*. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (the only evidence that trial counsel failed to properly investigate his case was petitioner's conclusory statement; petitioner should present witnesses at hearing to corroborate his assertion).

-12-

B.  Claim Alleging Involuntary Guilty Pleas

Petitioner's claim that "the outcome of the plea process was prejudiced by trial counsel's errors" is merely an argument encompassing the "prejudice" prong of *Strickland*, which we have thoroughly addressed above.  Petitioner's final claim, that "the trial judge erred in accepting the plea when defense counsel told him during the plea[ ] that appellant 'did not want to do it,'" is essentially an argument that his guilty plea was involuntarily entered.

A guilty plea must be entered knowingly, voluntarily, and intelligently.  *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969).  If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process.  *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5).  To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Id*.  Courts should consider the following factors when ascertaining the validity of a guilty plea:  (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.  *Id*. (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)).  "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'"  *Id*. at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).  Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable.  *Id*.  The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'"  *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
>     (A)     The nature of the charge to which the plea is offered;

(B)    the maximum possible penalty and any mandatory minimum penalty;

(C)    if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D)    the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)    the right to a jury trial;

(F)    the right to confront and cross-examine adverse witnesses;

(G)    the right to be protected from compelled self incrimination;

(H)    if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)    if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)    if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court

-14-

must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

After a full hearing, the post-conviction court found that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered. The transcript of the plea colloquy confirms that the trial court strictly followed the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure and applicable state and federal law. When the trial court had concerns stemming from petitioner's demeanor at the hearing, it immediately halted the proceedings to confer with trial counsel. Trial counsel assured the court that petitioner had been evaluated and found to be competent but that he appeared to have reservations about pleading guilty because "he wanted it to magically go away." After confirming petitioner's mental state, the trial court continued. When the trial court asked petitioner if he understood that he would give up his right to appeal by pleading guilty, he responded affirmatively. The trial court asked petitioner if he believed that it was in his best interest to plead guilty, and petitioner again answered affirmatively.

Post-conviction counsel questioned trial counsel in detail about the guilty plea proceedings. Trial counsel explained that when she informed the trial court that petitioner did not want to enter a plea, she meant that petitioner neither wanted to go to trial nor enter a plea; he just wanted the case to go away. Trial counsel testified that she thought that petitioner knew that entering a guilty plea was the best course of action but that he was not happy about it. Petitioner asserts that he entered his plea based on the misleading advice of counsel that he would be able to appeal the guilty plea. He testified that he followed the advice of counsel over the warning of the trial court that he would not be able to appeal.

In denying relief, the post-conviction court implicitly found that petitioner's testimony at the hearing was not credible. The court heard conflicting testimony from trial counsel and petitioner on this issue and credited trial counsel. "The trial court is the best source to determine the demeanor, credibility of witnesses, and the nuances of the evidentiary hearing." *State v. Taylor*, 968 S.W.2d 900, 905 n.3 (Tenn. Crim. App. 1997). Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court

credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing.  In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court.  It appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

## CONCLUSION

After a thorough review of the record, the parties' briefs, and the applicable case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE